JOHNSON, Plaintiff in error, v. STATE, Defendant in error.
[Two Cases.]

*Nos. State 137, 138. Argued June 4, 1969.—Decided June 27, 1969.*
(Also reported in 168 N. W. 2d 607.)

The cause was submitted for the plaintiff in error on the brief of *Clarence R. Parrish* of Milwaukee, and for the defendant in error on the brief of *Robert W. Warren,* attorney general, *E. Michael McCann,* district attorney of Milwaukee county, and *Theodore J. Hodan,* assistant district attorney.

CONNOR T. HANSEN, J. The defendant was charged with theft of an Aerins 24-inch, six horsepower snowblower, model 10 MG, of the approximate value of $315, which was the property of Bricklayer's Union No. 8 located at 5900 West Center street in Milwaukee. The theft allegedly occurred on February 20, 1968. The snowblower was never recovered and the defendant contends, (1) that the state did not prove that a crime had been committed, and (2) that the state did not prove what the value of the snowblower was at the time of the alleged taking.

On February 20, 1968, Donald Allain was employed by a used-car lot located at 5816 West Appleton avenue. He testified that at approximately 1 p. m. on that date the defendant approached him and attempted to sell an automobile. Allain told the defendant he was not interested. "Then another man come across the street, and they got in a conversation and they left and walked back across the street. Then I walked into my office and I looked out of the window and I seen them loading this snowblower on the back of this Corvair." The Corvair was on the wrong side of the street across from the used-car lot. After the snowblower was loaded they drove off.

Allain made a courtroom identification of the defendant and testified that the snowblower being loaded was orange and white.

Margaret Cavanaugh was working at Holzhauer & Company located at 5823 West Appleton avenue at approximately 1 p. m. on February 20, 1968. She testified

that at that time she was looking out the window and observed two men and a woman loading a snowblower onto a tannish gold or brown Corvair. The Corvair was facing the wrong way on Appleton avenue about 15 to 20 feet away from her on her side of the street. She testified that they attempted first to put the snowblower on the back seat and then in the trunk, but it was too large, so they loaded it on the back of the Corvair.

She made a courtroom identification of the defendant and testified that the snowblower was "white and orange and it had two handles coming up and it had two big wheels and blades that were orange."

She wrote down the license number of the Corvair. After calling various business places in the area that she knew to have snowblowers, she called the police. Then a man from the Bricklayer's Union came over and she gave him the license number of the Corvair.

The Bricklayer's Union is located directly behind the office of Holzhauer & Company and across the street.

Will Tingue, a city of Milwaukee police officer, testified that on February 22, 1968, he observed the defendant operating a fawn-beige Corvair bearing the same license number as Miss Cavanaugh had copied down. He testified that the defendant was the owner of the Corvair.

Albert Couillard, the business manager for the Bricklayer's Union, testified that in the afternoon of February 20, 1968, he was informed that the union's snowblower was missing. The snowblower was kept in a closet, but exposed to the open hallway, near the rear entrance to the building. He estimated that it was 250 feet from the closet to the 5800 block of Appleton avenue. He testified that he thought he observed the snowblower in the closet when he arrived at work on the morning of February 20, 1968.

Couillard described the snowblower as a large orange and white one. He testified that he gave no consent or permission to anyone, particularly not the defendant, to take and carry the snowblower away.

Walter Braun, a maintenance man at the office of the Bricklayer's Union, testified that when he arrived at work about 5 a. m. on the day the snowblower was discovered missing, he observed the snowblower. He also testified that he had not given anyone permission to remove the snowblower.

The defendant admitted approaching Allain at the used-car lot, and admitted owning a brown Corvair. However, he denied that another man came over to him and conversed with him while he was on the used-car lot and denied helping anyone load a snowblower onto his car, or having anything to do with the theft of a snowblower.

The defendant contends that the state failed to prove that a crime had been committed and that the defendant had committed it because there was no proof that anyone really knew if the snowblower had been stolen and by whom.

"We have said many times that when the question of the sufficiency of the evidence is presented on appeal in a criminal case the only question for this court is whether the evidence adduced, believed and rationally considered by the jury, was sufficient to prove the defendants' guilt beyond a reasonable doubt. . . . This ultimate test is the same whether the trier of the facts is a court or a jury." *Lock v. State* (1966), 31 Wis. 2d 110, 114, 142 N. W. 2d 183.

We are of the opinion that the evidence meets the test of sufficiency to prove beyond a reasonable doubt that the Bricklayer's Union owned a snowblower which was removed from a closet in the union office on February 20, 1968, without permission, and that the defendant loaded it onto his Corvair automobile and drove away. The union's snowblower had been seen on the morning of February 20, 1968, and discovered missing later that day. Two witnesses observed the defendant loading a snowblower fitting the description of the union's snowblower onto a Corvair automobile at about 1 p. m. on February 20, 1968. The Corvair was parked approximately 250 feet

from the closet of the union's building where the snowblower was stored. One witness took down the license number of the Corvair, and the Corvair was owned by the defendant. The defendant did not have permission to remove the machine.

There was also sufficient evidence to prove beyond a reasonable doubt that the value of the snowblower exceeded $100 at the time it was taken.

The business manager of the union, Couillard, testified that the snowblower had been purchased three months prior to the theft for $288 and had not been used. His testimony was based on his personal knowledge as business manager and upon the fact that there had been considerable discussion of the snowblower at membership meetings authorizing the purchase of the machine.

This testimony was corroborated by Walter Braun, the maintenance man at the union office, who stated that in the fall of 1967 he personally accompanied two of the union's trustees when they bought the snowblower. He testified that they paid $288 for it and that it had never been used.

The defendant makes an argument that because Couillard, in swearing out the complaint, stated that the value of the snowblower was $315, while at the trial he testified that its value was $288, Couillard's statements were self-contradictory and should have been given no weight.

Suffice to say the complaint stated that the snowblower was "of the approximate value of $315," and that at the trial Couillard testified that the machine actually retailed at around $315, $320, but they got a good buy.

*By the Court.*—Judgment and order affirmed.